UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BAR PROCESSING CORPORATION, | ) | Consolidated CASE NO. 1:19CV1885 |
| | ) | and CASE NO. 1:19CV2841 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| KEVIN D. BARNES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #57 & SEALED #58) of Defendants Kevin D. Barnes and Taft Stettinius & Hollister LLP ("Taft") for Summary Judgment. For the following reasons, the Motion is granted.

### I. FACTUAL BACKGROUND

Plaintiff Bar Processing Corporation ("BPC") is a Michigan company operating in the very specialized field of steel bar processing. Republic Steel is one of Plaintiff's largest customers and Jade-Sterling Steel is a long-time customer.

Defendant Barnes, a partner at the Taft law firm, began representing Jade in the mid-

1990's and provided legal services to Jade on various general business matters, such as member share transfers and financing issues. Another Taft lawyer, Lawrence Davison, began representing Plaintiff in workers' compensation matters in 2007, and continued to do so through October 2019.

Dennis Perrino was general manager at Plaintiff's Wickliffe, Ohio facility from 2011 until he resigned in July, 2018; and Perrino was Plaintiff's primary contact with Jade.

In February 2018, Jade approached Perrino about starting a new business which would perform steel processing "in-house."

In April 2018, Jade principals approached Barnes about forming new entities – Great Lakes Steel Processing, LLC and Crane Center Properties, LLC. Barnes ran a conflict check for Great Lakes, Jade, and each of the Jade principals, but did not include Plaintiff as an adverse party. No conflicts were identified.

At an April 24, 2018 meeting, the Jade principals informed Barnes of Perrino's anticipated employment with their newly-created entities. He asked to review Perrino's current employment agreement regarding non-compete obligations. They advised Barnes that the employment contract had expired, but that they would arrange to get him a copy. Barnes told his clients that if they are hiring somebody from another business, "they should not and could not obtain any confidential information regarding his current employer, and that they had to make sure that . . . he did not bring any confidential information with him, and that all of his devices should be cleared of any confidential information." (ECF DKT #58-9, Barnes Depo. at 43-44).

Although Perrino's contract clearly named Plaintiff as employer, Barnes did not make

note of that nor run a conflict check referencing Plaintiff.

Barnes provided legal services for Jade, Great Lakes and Crane Center, assisting them with entering into operating agreements, with obtaining financing and with purchasing machinery and real estate to enable them to commence steel processing operations.  In addition, Barnes provided a draft employment agreement for Perrino with Great Lakes Steel.

According to Plaintiff, Perrino stole confidential information and trade secrets from BPC which included budgets, pricing and customer lists.  Perrino provided a flash drive to one of Jade's principals, Scott Herman.  Barnes insists that he knew nothing about these activities.

On August 28, 2018, Plaintiff filed a lawsuit against Perrino, Jade and Great Lakes Steel in the U.S. District Court for the Eastern District of Michigan, Southern Division. Plaintiff obtained a temporary restraining order precluding those defendants from using trade secrets and from commencing steel processing.

Taft ran a conflict check to see if it could defend Jade and Great Lakes in Plaintiff's Michigan litigation.  No conflict came up.  However, Plaintiff's counsel informed Taft that Taft attorney Davison represented Plaintiff on workers' compensation matters; so, Taft declined that representation.  Apparently, the Taft firm experienced a software issue which caused the inaccurate conflict check.  (ECF DKT #58-10, Thomas Lee Depo. at 3).

Plaintiff realized that if Great Lakes commenced operations, it would lose Jade and perhaps Republic Steel as customers.  The Wickliffe facility would be put out of business. Consequently, Plaintiff agreed to a confidential settlement of the Michigan lawsuit, paid $4 million to the defendants and purchased the specialized equipment and the real estate

designated as the site of the new operation — all to prevent Great Lakes from competing.

The above-captioned consolidated actions followed. Plaintiff asserts Legal Malpractice in Count I of both Complaints and Breach of Fiduciary Duties in Count II of both Complaints. Plaintiff makes the same allegations against both Barnes and Taft, including:

a. Failing to perform a conflict check before rendering legal services to Perrino, Great Lakes Steel and Jade-Sterling in matters that were directly adverse to BPC, Taft's existing client;

b. Failing to recognize that Perrino, Great Lakes Steel and Jade-Sterling were engaged in tortious and other wrongful acts;

c. Failing to advise BPC that Perrino, Great Lakes Steel and Jade-Sterling were engaged in tortious and other wrongful activity that was directly adverse to BPC;

d. Failing to advise Perrino, Great Lakes Steel and Jade-Sterling that their actions were tortious and wrongful, and that BPC could assert meritorious claims against them;

e. Forming Great Lakes Steel, the purpose of which was to compete against BPC;

f. Forming Crane Center, the purpose of which was to purchase a facility that would compete against BPC; and

g. Representing Great Lakes Steel and Crane Center in connection with their lending relationship with Fifth Third Bank, all to the detriment of BPC.

As a direct and proximate result of Defendants' legal malpractice and breach of fiduciary duties, Plaintiff alleges it has incurred the following damages: (a) substantial monies paid pursuant to the Settlement Agreement; (b) legal fees, costs and other expenses incurred in prosecuting the First Lawsuit; (c) loss of employees and employee restructuring

expenses; and (d) lost revenues and/or profit.

In their Motion for Summary Judgment, Defendants argue that Plaintiff lacks standing to maintain a legal malpractice claim because there is no attorney-client relationship between Plaintiff and Barnes. In addition, the law firm, Taft Stettinius & Hollister LLP, cannot be held directly liable as a matter of law. Defendants also assert that a breach of fiduciary duties claim cannot stand because it is subsumed by the malpractice claim.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant

probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**<u>Legal Malpractice</u>**

Under Ohio law, to state a claim for legal malpractice a plaintiff must satisfy the following elements: "(1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause and (5) damages." *Antioch Litigation Trust v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 764 (S.D. Ohio 2010), citing *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 228, 887 N.E.2d 1167 (2008).

In a subsequent decision, the Ohio Supreme Court reiterated the prerequisites for a legal malpractice claim: "To establish a cause of action for legal malpractice, a claimant must

demonstrate the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by that breach." *New Destiny Treatment Ctr., Inc. v. Wheeler,* 129 Ohio St.3d 39, ¶25, 950 N.E.2d 157 (2011). "If a plaintiff fails to establish a genuine issue of material fact **as to any of the elements**, the defendant is entitled to summary judgment on a legal malpractice claim." *Id*. (Emphasis added).

In the instant matter, it is undisputed that Barnes never represented Plaintiff on any matter and had no attorney-client relationship with Plaintiff. Plaintiff concedes in its Opposition Brief (ECF DKT #61 at 14): "If this Court determines an attorney-client relationship is a necessary element of a legal malpractice claim, BPC's acknowledgment it never had an attorney-client relationship with Barnes individually defeats that claim against Barnes." The Court concludes, therefore, that Plaintiff lacks standing to sue Barnes for legal malpractice.

Even if the Court were to treat Plaintiff's claims as third-party malpractice claims arising out of Barnes's representation of Jade and Great Lakes, it would be unavailing. "It is by now well-established in Ohio that an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice." *Simon v. Zipperstein*, 32 Ohio St.3d 74, 76, 512 N.E.2d 636 (1987). Plaintiff does not assert, nor provide evidence of, privity between itself and Barnes' clients nor malice on the part of Barnes.

In Ohio, "only individuals may practice law," and only attorneys may enter into attorney client relationships. *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio

St. 3d 594, ¶16, ¶18, 913 N.E.2d 939, 943 (2009). "While clients may refer to a law firm as providing their legal representation or giving legal advice, in reality, it is in every instance the attorneys in the firm who perform those services and with whom clients have an attorney-client relationship." *Id*. Because a law firm is merely "a business entity through which one or more individual attorneys practice their profession" the Ohio Supreme Court has held that "a law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice." *Id*. Only attorneys can commit—and be directly liable for—malpractice, and a law firm may only be vicariously liable if one of its attorneys is held liable. *Id*.

The Taft law firm, pursuant to Supreme Court of Ohio precedent, can only be vicariously liable if one of its attorneys is first held liable. *Wuerth, id.* Therefore, in the absence of any evidence of an attorney-client relationship between Barnes and Plaintiff, Plaintiff fails to assert a malpractice claim against the Taft firm.

In support of the Legal Malpractice claim, Plaintiff relies upon the expert opinion of Charles J. Kettlewell. (ECF DKT #61-18, Exhibit Q). Kettlewell points out that for actions taken or failed to be taken by attorneys subsequent to February 1, 2007, the Ohio Rules of Professional Conduct (ORPC) apply. He opines that the ORPC provides a framework for considering an Ohio attorney's obligations and responsibilities. (ECF DKT #61-18 at 3).

Based upon the evidence provided to him, Kettlewell notes that there is no dispute that attorneys with the Taft firm were representing BPC in workers' compensation matters, while Barnes simultaneously provided representation to Great Lakes/Jade. Furthermore, having the opportunity to review the employment agreement, Barnes knew or should have known that

-8-

Perrino was BPC's employee and was planning to leave and compete directly against it. (ECF DKT #61-18 at 5). Kettlewell finds that a conflict of interest should be imputed against Defendant Barnes. "As Kevin Barnes failed to even perform a search to determine whether Bar Processing Corporation was a current client, it is my opinion that this failure was below the standard of care required of Ohio attorneys." (ECF DKT #61-18 at 8).

Kettlewell cites Rule 1.7(a) of the ORPC, in part:

a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:

(1) the representation of that client will be directly adverse to another current client;
(2) there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyers' responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

And ORPC Rule 1.10(a):

While lawyers are associated in a firm, none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rule 1.7…

However, the Court cannot disregard the statement in the Preamble to the ORPC ¶¶17, 20: "Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . [F]or purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these rules determine whether a client lawyer relationship exists."

Thus, the Court determines that the imputation of a conflict of interest under the ethical rules may conceivably serve as a basis for disqualification or for disciplinary action, and may possibly be evidence of breach of the applicable standard of conduct, but, despite

-9-

Plaintiff's expert's opinion, it cannot create an attorney-client relationship for purposes of civil liability where none otherwise exists.

Plaintiff's failure to demonstrate the indispensable element of the existence of an attorney-client relationship is fatal to the Legal Malpractice claim against Barnes and the Taft law firm.

**Breach of Fiduciary Duties**

To maintain a claim of breach of a fiduciary duty, the plaintiff must prove (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. *Harwood v. Pappas & Assoc.*, 8th Dist. Cuyahoga No. 84761, 2005 WL 1177877, *4 (Ohio App. May 19, 2005), citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988).

"A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care. And in negligence actions, we have long held that 'one seeking recovery must show the existence of a duty on the part of the one sued not to subject the former to the injury complained of, a failure to observe such duty, and an injury resulting proximately therefrom." *Strock*, 38 Ohio St. 3d at 216, citing *Stamper v. Parr–Ruckman Home Town Motor Sales*, 25 Ohio St.2d 1, 3, 265 N.E.2d 785, 786 (1971); *Baier v. Cleveland Ry. Co.*, 132 Ohio St. 388, 391, 8 N.E.2d 1, 2 (1937).

"Under Ohio law, a fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996).

"A fiduciary relationship cannot be unilateral and may be created informally only when both parties understand that a special trust or confidence has been reposed." *Cleveland Constr., Inc. v. Roetzel & Andress, L.P.A.*, 8th Dist. Cuyahoga No. 94973, 2011 WL 916922, *4 (Ohio App. Mar. 17, 2011). *See, Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282, 286, 390 N.E.2d 320 (1979).

In the within factual setting, Plaintiff and Barnes were strangers to each other; and as the Court has already found, they maintained no attorney-client relationship. Neither Barnes and Plaintiff nor the Taft firm and Plaintiff understood that Barnes held a position of superiority or influence over Plaintiff. Plaintiff never reposed any special position of trust or confidence in either Barnes or Taft. Plaintiff provides no evidence otherwise.

The Court's reading of Count II - Breach of Fiduciary Duties, in both Plaintiff's Complaint against Barnes (1:19CV1885) and Plaintiff's Complaint against Taft (1:19CV2841), reveals that Plaintiff recites the identical acts in support of disloyalty and infidelity as Plaintiff alleges in support of attorney malpractice.

"Malpractice by any other name still constitutes malpractice." *Muir v. Hadler Real Estate Management Co.*, 4 Ohio App.3d 89 (Franklin Cty 1982). A litigant may assert a claim of breach of fiduciary duty if the conduct underlying that claim is **distinct** from the conduct underlying the malpractice claim. *Pierson v. Rion*, 2010 WL 1636049, *2 (Ohio App.
Apr. 23, 2010). (Emphasis added).

Plaintiff has been unsuccessful in establishing a legitimate claim of legal malpractice against either Defendant and has equally failed to demonstrate a discrete, independent

relationship arising out of special trust or confidence resting in the Defendants.  "Ohio courts have repeatedly rejected attempts by a plaintiff to avoid the untoward effects of a legal bar by pleading alternative theories of recovery in lieu of the barred action."  *Strock*, 38 Ohio St. 3d at 216.  The Court will not accept Plaintiff's attempted breach of fiduciary duty claim as a viable alternative to Plaintiff's failed malpractice action.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #57 & SEALED #58) of Defendants Kevin D. Barnes and Taft Stettinius & Hollister LLP ("Taft") for Summary Judgment is granted. Plaintiff's consolidated Complaints No. 1:19CV1885 and No. 1:19CV2841 are therefore dismissed.

**IT IS SO ORDERED.**

**DATE: August 18, 2021**

        s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**